WANTZELIUS, OLIVER & CO. *v.* J. T. SILVA BANKING AND COMMERCIAL CO.

APPEAL from the District Court of San Juan.

No. 564.—Decided January 13, 1911.

CONTRACTS—COMMERCIAL PURCHASE AND SALE.—In the contract of purchase and sale of personal property, when this is to be delivered at a date subsequent to that of the contract, the loss suffered by the merchandise before its delivery shall be borne by the vendor.

ID.—JUDICIAL DEPOSIT.—In case the purchaser should fail to dispose of the merchandise at the date fixed for its delivery, and the vendor should demand the fulfilment of the contract, he must deposit the merchandise in court so as to bind the purchaser to the payment thereof, for, if such deposit has not been made nor the purchaser consented to the vendor's constituting himself the depository of the merchandise, the contract cannot be considered as having been consummated nor the purchaser be liable for the loss of the merchandise sold.

The facts are stated in the opinion.

*Messrs. Carlos López de Tord* and *Nemesio R. Canales* for appellants.

*Messrs. Eduardo Acuña* and *José E. Figueras* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

The complaint in this case sets up that the complainants are a firm doing business in Ponce and that the defendants are a firm doing business in San Juan, and that they each, among other things, buy and sell coffee; that the complainants, so it is alleged, through their agents, N. Llauri & Co., sold to the defendant firm 200 sacks of coffee at the price of $12 a quintal, the condition of the sale being that the coffee should be delivered immediately and placed free on board the steamer "Conde Wifredo" in the port of Ponce; that this contract of bargain and sale took place on November 30, 1908, and that in pursuance of the condition that the coffee should be delivered immediately on board the steamer "Conde Wifredo," the complainants, on December 3, addressed a telegram to the defendants asking them if they could embark said coffee, inasmuch as the said steamer was about to sail from Ponce; the defendants answering that the complainants should embark said coffee by the French steamer or by the "Juan Forgas," according to the advice which defendants would give complainants in due time; that bearing in mind that these said steamers, indicated latterly by the defendants, namely the French steamer and the "Juan Forgas," were liable to delay more than 15 days in leaving the port of Ponce, and the vendors, not wishing to assume any greater responsibilities than those imposed upon them by virtue of the contract of purchase and sale heretofore related, addressed themselves by letter to the defendant firm, letting them know that the coffee would be stored for their due disposition and sending them bill of sale for the amount of $4,840, the price of the coffee sold, according to agreement.

The complaint goes on to state that on December 5, 1908, a fire destroyed the storehouse of the complainant on the Playa de Ponce and all the sacks of coffee belonging, so it is alleged, to the defendant firm, and that the amount of insurance *pro*

*rata* was only enough to reduce the claim against defendants by $133.94.

The letter which the complainant firm addressed to the defendant firm was not received by the latter until after the fire.

The court below was of the opinion that the complainants had failed to prove that it was an essential condition of the contract that the coffee should be shipped on the "Conde Wifredo," but that the boat was left uncertain and to be indicated by the complainants. We think the proof supports the view of the court as do the words of the complaint, namely:

"That this contract of bargain and sale took place on November 30, 1908, and in accordance with the condition that the coffee should be delivered immediately on board of the steamer "Conde Wifredo," at the port of Ponce, the complainants on December 3, addressed a telegram to the defendants asking them if they could embark said coffee inasmuch as the said steamer was about to sail from the port of Ponce."

The judgment was consequently against the complainants on the theory that, when a contract is made for subsequent delivery, the intermediate risk is on the vendor. The appellants, however, insist that under the facts of this case the title of the goods in question passed from the appellants to the appellees and that the appellants were the mere bailees at the risk of the appellees, and that, as such bailees, they did all that they reasonably could to protect the interests of their bailors.

Both parties rely on different provisions of the Code of Commerce. We think the case is plainly governed by the provisions of article 332, which reads as follows:

"Article 332. If the purchaser refuses without just cause to receive the goods bought, the vendor may demand the fulfilment or rescission of the contract, depositing the merchandise in court in the first case.

"The same judicial deposit may be made by the vendor whenever the purchaser delays in taking charge of the merchandise.

"The expenses arising from the deposit shall be defrayed by the person who caused said deposit to be made."

The averments and proof show that the complainants sought the fulfilment of the contract. Hence to bind the defendants without their consent the complainants should have sought a judicial deposit. Without a petition and deposit to this effect, or without the consent of the defendants, the contract still required a delivery of the merchandise to the said defendants, and we must hold that the contract was never consummated and the risk was by the law entirely on the appellants. We find no error in the judgment, and the same must be affirmed.

*Affirmed.*

Justices MacLeary and del Toro concurred.

Mr. Chief Justice Hernández did not sit at the hearing of this case.